UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| CYNTHIA PENA,<br>PLAINTIFF | § § § | |
| VS. | § § | CIVIL ACTION NO. |
| FIRST STATE BANK OF ODEM<br>DEFENDANT | § § § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**I. JURISDICTION AND VENUE**

1. This is a civil action against Defendant, First State Bank of Odem for damages in violation of rights guaranteed to Plaintiff under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq. in accordance with its provisions against religion discrimination and retaliation. More specifically, this action seeks monetary damages, including mental anguish, and all other appropriate relief to which Plaintiff is entitled under the law on account of religion discrimination and retaliation.

2. This is also a civil action seeking redress for violation of rights guaranteed to the Plaintiff under Title I, of the Americans with Disability Act of 1990, 42 U.S.C. §12101, et. seq., in accordance with its provisions prohibiting discrimination against persons with physical and mental disabilities. More specifically, this action seeks monetary damages, including mental anguish, and all other appropriate relief to which Plaintiff is entitled under the law on account of discrimination on the basis of disability and retaliation.

3. This is a civil action seeking redress for violation of rights guaranteed to the Plaintiff under Title I, of the Americans with Disability Act (ADA), §101(9), 42 U.S.C. §12111(9), in

1

accordance with its provisions regarding employment discrimination for failure to make reasonable accommodation to disabilities and other protections and benefits provided under the ADA.

4. The jurisdiction of this Court is invoked pursuant to 42 U.S.C. §2000-16(C) (Supp. 1993), 28 U.S.C. §1343(a), 28 U.S.C. §1331, and Title I, of the Americans with Disability Act, §102(b) (1), 42 U.S.C. §12117(a).

## II. PARTIES

5. Cynthia Pena, (hereinafter Plaintiff), as a former employee, was an individual employed by an employer as contemplated by Title VII of the 1964 Civil Rights Act, as amended and Title I, of the Americans with Disability Act, §101(4), 42 U.S.C. §12111(4). Plaintiff was a resident of Nueces County, Texas at the time of the incident. Plaintiff is a citizen of the United States and at all times relevant to this complaint was a resident of this division.

6. First State Bank Odem, (hereinafter First State Bank or Defendant) is a financial institution in the State of Texas and operates as a Locally Owned Independent Community Bank, and is an employer as contemplated under Title VII of the 1964 Civil Rights Act, as amended and Title I, of the Americans with Disability Act, §101(5)(A), 42 U.S.C. §12111(5)(A). Pursuant to Rule 4(h)(1)(B) of the Federal Rules of Civil Procedure, service of process may be served upon Charles R. Miller, Jr., President/CEO, whose address is First State Bank, 201 Main St., Odem, Texas 78370.

## III. ADMINISTRATIVE PROCESS

7. On or about November 10, 2017, Plaintiff filed a written charge of discrimination on the basis of religion and disability discrimination and retaliation with the U.S. Equal Employment

Opportunity Commission (EEOC) through the Corpus Christi Human Relations Commission.

8. Subsequently, EEOC, through the U.S. Department of Justice, Civil Rights Division, sent a Notice of Right to Sue dated August 29, 2018, to Plaintiff, which she subsequently received.

9. Plaintiff has exhausted her administrative remedies with EEOC and has timely filed this action.

## IV. FACTS

10. On or about May 22, 2000, Plaintiff was re-hired by First State Bank of Odem (hereinafter First State Bank or Defendant) as a teller and soon thereafter promoted to head teller. Following sustained satisfactory performance, Plaintiff was promoted to assistant cashier and then branch manager at First State Bank's Robstown branch.

11. As a branch manager for First State Bank, Plaintiff's duties and responsibilities included, among other things, managing a staff of many employees, coordinating compliance with regulatory standards, overseeing an enormous budget, and setting and implementing institutional policies and practices. In her capacity as branch manager for First State Bank, Plaintiff consistently met the performance standards established and promulgated by First State Bank and regularly received positive periodic performance reviews.

12. Plaintiff is a Jehovah's Witness, a deeply-held faith she has practiced for most of her life. While employed by First State Bank, Plaintiff's religious beliefs were widely known by First State Bank, including managerial staff members. Based upon Plaintiff's religious beliefs, there were certain activities, like some holidays, that Plaintiff did not participate in or observe, such as Christmas. As such, Plaintiff requested First State Bank to respect her religious beliefs and practices. Unfortunately, that was not a reality that Plaintiff experienced at First State Bank.

13. When Plaintiff was re-hired on or about May 22, 2000, Plaintiff's supervisor was Beverly

Moore, Vice President, who knew that Plaintiff attended a religious convention every year. Even so, Ms. Moore would tell Plaintiff she would have to wait until the employees ahead of her in seniority selected their vacation days and if any of the two days she requested fell on their vacation days then Plaintiff could not attend her religious convention. Although other non Jehovah's Witness employees had church retreats and days off for Good Friday, they were allowed to attend their gatherings regardless of employee seniority or conflicts with vacation schedules.

14. Ms. Moore treated Plaintiff differently in other ways as well with respect to a donation from a bank customer who wanted to give First State Bank staff poinsettias. Even so, Ms. Moore made the decision to exclude Plaintiff from the customer's personal staff gift because of Plaintiff's religious beliefs and practices.

15. During Plaintiff's employment at First State Bank, a board of director member would give a poinsettia to the bank employees; however, Plaintiff was again excluded for being a Jehovah's Witness. On another occasion one of First State Bank board of directors, Mr. Horne came to Robstown Branch with tickets to eat at Joe Cotton's Bar-B-Que. He pulled out two tickets and said to Plaintiff and another employee, "Oh, Cynthia does not accept gifts". Later, Mr. Craig Cavitt, Senior Vice President continued with the discriminatory treatment of Plaintiff because Plaintiff was a Jehovah's Witness; Mr. Cavitt verbalized his religious animus to First State Bank vice president, Corina Garcia who replaced Beverly Moore.

16. Then First State Bank president, Buddy Wood, would send an envelope to all employees at the end of year with a small bonus. However, Ms. Moore would wave the envelope in Plaintiff's face in front of all the employees and tell Plaintiff, "This is for Christmas, so if you don't want it you should give it back to Mr. Wood". On another instance, one year Ms. Moore

4

put the envelopes under the Christmas tree and said to the staff that if you wanted it you had to go get it.

17. With impunity, Ms. Moore would come to Plaintiff and taunt and harass her during the holidays and tell Plaintiff in front of the other employees during the holidays, "I know Jesus Christ was not born on December 25th. We celebrate it because of tradition and because it's fun." Plaintiff would not respond but she felt embarrassed when she was treated that way. When customers would bring gifts during the holidays for all employees and they would entrust Ms. Moore with distributing them to everyone but Ms. Moore would exclude Plaintiff. Seemingly, at every opportunity, Ms. Moore made sure to single out Plaintiff and remind Plaintiff she was a Jehovah's Witness and did not celebrate Christmas.

18. On yet other occasions, discrimination against Plaintiff was tolerated by First State Bank management officials. For example, sometimes there were meetings at night and the bank would pay overtime for attending. However, Craig Cavitt would choose and pick who got paid. This decision-making process worked to Plaintiff's disadvantage. Plaintiff attended a meeting one time and Mr. Cavitt did not pay Plaintiff the overtime she was due. The relentless pattern of discrimination was all too familiar to Plaintiff, only to portend what she would encounter in the future.

19. From time to time, First State Bank managed to treat Plaintiff differently when it came to operational support. For example, on those occasions when Plaintiff was shorthanded, unlike the other branches, Mr. Craig would pull the floaters at the Robstown branch and temporarily place the floaters at the other branches, which left Plaintiff shorthanded many times and made it difficult for Plaintiff to manage her daily branch activities.

20. Other instances of inadequate and desperate operational support occurred when the

computer system would go down. Mr. Cavitt was in charge to solve computer system problems or give the directive to call for assistance. Even so, Mr. Cavitt would at times ignore Plaintiff's computer system challenges, which made it difficult for her to assist the customers in their banking needs. For unexplained reasons from Mr. Cavitt, Plaintiff sometimes went two days with computer problems until Mr. Cavitt would give Plaintiff the permission to make the call to fix the problem, which usually got resolved in as little as 30 minutes. What's more, if office machines needed replacement, Plaintiff would e-mail Mr. Cavitt and sometimes she would not hear back from him. The other managers did not encounter the same difficulty replacing equipment as Plaintiff. Moreover, Plaintiff experienced similar treatment from Mr. Cavitt when it came to securing safe and functional chairs for the tellers.

21. As First State Bank vice president, Corina Garcia, addressed many issues in reference to discrimination toward Plaintiff due to religion to First State Bank CEO, Bobby Miller, who told Ms. Garcia he knew but that his hands were tied because Mr. Cavitt had been there many years and the Board of Directors liked him. Unfortunately, Mr. Miller told Ms. Garcia to stay out of it and leave it alone. Even worse, First State Bank Branch Manager, Lana Tong, at the NW Branch informed Mr. Miller about how unjust the bank had treated Plaintiff because of her religion. Ms. Tong previously made Ms. Garcia aware of the discrimination against Plaintiff because of her religion when Ms. Garcia was hired as new boss over operations to replace Ms. Moore.

22. On or about March 29, 2017, Plaintiff experienced a medical condition involving heart palpitations, which caused Plaintiff to go to the emergency room for treatment. Several weeks later, on April 14, 2017, Plaintiff left work early at First State Bank to go to the emergency room again because she was experiencing another episode of heart palpitations. Interesting, one of Plaintiff's colleagues, Antonio "Tony" Delgado, III, First State Bank Senior Vice Present/Senior

Lender sent Plaintiff a text wondering if Plaintiff's work at First State Bank was stressing her out.

23. While out from work, within a few days, Plaintiff notified her immediate supervisor, First State Bank Vice President, James Spruce about the circumstances surrounding her absence. During her communications with Mr. Spruce, Plaintiff informed Mr. Spruce about placement of her on sick leave, which was approved. Several weeks later, on or about May 7, 2017, Plaintiff informed Mr. Spruce that she would not be able to report to work on May 8, 2017. With Plaintiff's disclosure to Mr. Spruce, he requested Plaintiff to provide him with a statement from her doctor. A few days later, on or about May 11, 2017, Plaintiff dropped off her doctor's statement.

24. While off from work, Plaintiff also communicated with Craig Cavitt, First State Bank Senior Vice President of Human Resources, when on or about May 22, 2017, Plaintiff informed him that she was still ill but that she was not ready to stop working and she desperately needed to maintain her employer-provided health care. Plaintiff explained to Mr. Cavitt that her medical condition affected her emotionally. At the same time, Plaintiff requested Mr. Cavitt to keep her updated on when she would run out of sick days or medical leave. However, despite Plaintiff's request to Mr. Cavitt, she did not hear back from him.

25. For several months Plaintiff had undergone a series of medical tests and examinations. Among other things, Plaintiff had been diagnosed with having some medical issues, including acute anxiety, a mental impairment that affected Plaintiff's concentration and stamina.

26. When Plaintiff tried to come back to work after meeting with Mr. Cavitt on August 4, 2017, Mr. Cavitt told Plaintiff her position was no longer available. Without prior notice or explanation, Plaintiff had been terminated. The revelation to Plaintiff was a surprise since First

State Bank had a long-standing practice of providing and placing an employee into a position following a leave of absence by that employee. First State Bank's employee manual does allow a position in the bank for an employee if the position the employee had during a leave of absence is no longer available. Oddly, however, Plaintiff's immediate supervisor, James Spruce, told Plaintiff her position was not filled and they did not know what to do.

27. Other First State Bank employees have been sick for a period of time, including Mr. Cavitt and had to stay home to recuperate and those employees have not lost their jobs, insurance, or positions at the bank.

28. First State Bank has a leave policy that covers different employee absences, including absences connected with illnesses. In its Employee Handbook, First State Bank has a leave policy that contemplates and authorizes periods of leave. A First State Bank employee, like Plaintiff, is required to request leave provided she identifies the reason for the leave and expected length of leave. Plaintiff satisfied First State Bank's leave policy when, on or about May 8, 2017, she gave notice of her leave request and her return status.

29. In connection with its leave policy, First State Bank has also operated under a practice whenever First State Bank employees who have been on extended leave have been able to return and maintain their employment with First State Bank. For example, for one First State Bank employee, although her sick leave exceeded her available leave balance with First State Bank when she returned from her sick leave she was placed in another position with First State Bank and was not deemed to have abandoned her job with First State Bank.

30. To supplement Plaintiff's medical history, she was examined by a medical professional who determined that the physical medical condition that Plaintiff suffered from has its roots in a physiological condition. This physiological condition affects Plaintiff's neurological and

cardiovascular systems. Plaintiff's physiological condition and resulting impairment has had some diminishing effect on her, particularly with respect to performing some manual tasks, standing, and concentration. For some time, Plaintiff's episodic condition causes her to become ill which results in Plaintiff missing work from time to time.

31. Notwithstanding, Plaintiff's absences on account of her medical condition, she has been able to perform the essential functions of her job. What's more, despite Plaintiff's medical condition, she generally met the performance standards expected of her by First State Bank. Also, during part of Plaintiff's employment with First State Bank, Plaintiff was a disabled employee performing her ordinary and regular duties.

32. As part of First State Bank's scheme to discriminate against Plaintiff, First State Bank did not provide a reasonable accommodation to Plaintiff to the known limitations of an otherwise qualified individual with a disability. Plaintiff requested an accommodation from First State Bank, however, First State Bank through its management staff, decided not to extend or apply its accommodation practice to benefit Plaintiff. Instead, First State Bank refused to approve and grant Plaintiff an extended leave of absence. This was not the first instance where First State Bank treated Plaintiff differently. During her employment at First State Bank, Plaintiff was singled out for other reasons as well, including matters related to her long-held and widely known faith and religious practice and observances.

## V. **FIRST CAUSE OF ACTION**

33. Plaintiff repeats, realleges and incorporates herein as part of her First Cause of Action paragraphs 1 through 32 of this Complaint, inclusive and in their entirety, and further alleges:

34. she was a member of a protected class by reason of her religion;

35. she suffered an adverse employment action;

36.     she was replaced by someone outside the protected class or was treated differently than similarly-situated, non –protected employees;

37.     she was treated differently than similarly-situated, non-protected employees.

## VI. SECOND CAUSE OF ACTION

38.     Plaintiff repeats, realleges and incorporates herein as part of her Second Cause of Action paragraphs 1 through 32 of this Complaint, inclusive and in their entirety, and further alleges:

39.     she was a member of a protected class by reason of her disability;

40.     she suffered an adverse employment action;

41.     she was replaced by someone outside the protected class or was treated differently than similarly-situated, non –protected employees;

42.     she was treated differently than similarly-situated, non-protected employees.

## VII. THIRD CAUSE OF ACTION

43.     Plaintiff repeats, realleges and incorporates herein as part of her Third Cause of Action paragraphs 1 through 32 of this Complaint, inclusive and in their entirety, and further alleges:

44.     Defendant's conduct and treatment of Plaintiff was in violation of Title I, of the Americans with Disability Act, §102(b)(1), 42 U.S.C. §12112(b)(1), and Equal Employment Opportunity Commission's guidelines promulgated thereunder with respect to disability discrimination.

45.     Plaintiff is a member of a protected group or class by reason of her disability.

46.     Plaintiff is a qualified individual with a disability;

47.     The Defendant knew of Plaintiff's substantial limitations caused by Plaintiff's condition; and

48.     Despite Plaintiff's disability, Defendant failed to provide reasonable accommodation to

Plaintiff.

## VIII. FOURTH CAUSE OF ACTION

50. Plaintiff repeats, realleges and incorporates herein as part of her Fourth Cause of Action paragraphs 1 through 32 of this Plaintiff's Original Complaint, inclusive and in their entirety, and further alleges:

51. Defendant engaged in retaliation towards Plaintiff. The retaliation against Plaintiff can be shown in the following manner:

52. Plaintiff was an employee who engaged in protected activity or conduct involving a discriminatory practice as it related to conduct covered under the law or participating in any manner in an investigation or protestation of proscribed conduct.

53. The Defendant took an adverse employment action against Plaintiff.

54. There is a casual connection between the protected activity and the adverse employment action.

## IX. JURY DEMAND

55. Plaintiff hereby demands and requests a jury trial.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff requests that Plaintiff have:

1. Judgment entered for the Plaintiff against Defendant.

2. Award Plaintiff equitable relief including back pay and benefits pursuant to Title VII of the Civil Rights Act of 1964, as amended, Title I, of the American's with Disability Act, §102(b)(1), 42 U.S.C. §12117(a).

3. Award Plaintiff front pay pursuant to Title VII of the Civil Rights Act of 1964, as amended, Title I, of the American's with Disability Act, §102(b)(1), 42 U.S.C. §12117(a).

4. Award Plaintiff damages for physical and mental pain and suffering, including compensatory and punitive damages in connection with those claims made herein pursuant to

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, Title I, of the American's with Disability Act, §102(b)(1), 42 U.S.C. §12117(a), and 42 U.S.C. §1981a(b)(3).

5. Attorney's fees and costs as provided by 42 U.S.C. §2000e-5(k), Title I, of the American's with Disability Act, §102(b)(1), 42 U.S.C. §12112(b)(1), and 42 U.S.C. §1988;

6. Pre-judgment interest where permitted by law; and

7. Such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

/s/ Charles C. Smith
Charles C. Smith
615 N. Upper Broadway, Suite 1710
Corpus Christi, Texas 78401
Telephone No.: (361) 883-1055
Facsimile No.: (361) 883-4041
Texas State Bar No.: 18550210
Federal Admission No.: 4312
E-Mail: ccsmithlaw@aol.com
ATTORNEY FOR PLAINTIFF