UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| CYNTHIA PENA, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:18-CV-426 |
| | § | |
| FIRST STATE BANK OF ODEM, | § | |
| | § | |
| Defendant. | § | |

## <u>ORDER</u>

Plaintiff Cynthia Pena (Pena) filed this action against her former employer, First State Bank of Odem (the Bank). Contrary to the Bank's assertion that she resigned or abandoned her job, Pena complains that she was terminated and that the termination was discriminatory and retaliatory on the basis of religion and disability. D.E. 1. She also claims that the Bank failed to accommodate her disability. *Id*.

Before the Court is Defendant Bank's motion for summary judgment. D.E. 18. The Bank seeks dismissal of all claims for failure to demonstrate a prima facie case and failure to raise a disputed issue of material fact on pretext. D.E. 18. The Bank also asserts that the religious discrimination claims are barred by limitations. Pena filed her response objecting to the Bank's evidence and disagreeing with its factual analysis. D.E. 21. The Bank filed a reply and a subsequent motion for leave to file that reply in excess of the page limits. D.E. 22, 23. The Court GRANTS the motion for leave (D.E. 23) and considers the reply in its entirety. For the reasons set out below, the Court GRANTS the motion for summary judgment (D.E. 18) and DISMISSES this action.

# STANDARD OF REVIEW

## A. Summary Judgment

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52. In making this determination, the court must consider the record as a whole by reviewing all pleadings, depositions, affidavits, and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp*., 278 F.3d 448, 451 (5th Cir. 2002).

The court may not weigh the evidence or evaluate the credibility of witnesses. *Id*. Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e); *see also Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving

party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451.

## B. Discrimination/Retaliation

When a plaintiff relies on circumstantial evidence to prove discrimination or retaliation, the courts use the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973). Under that framework, the plaintiff must first establish a prima facie case. If successful, the burden of production shifts to the defendant to articulate a non-discriminatory or non-retaliatory reason for the adverse employment action. *Id*.; *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510 (1993) (this is a burden of production, not persuasion). If defendant articulates such a reason, then the burden of proof returns to the plaintiff to raise a disputed issue of material fact that the defendant's stated reason is mere pretext for discrimination or retaliation. *E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009) (disability

discrimination case); *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 388-89 (5th Cir. 2007) (retaliation case).

## DISCUSSION

### A. Facts

The Bank initially hired Pena in the 1990s. She voluntarily left the Bank's employ to work elsewhere and was re-hired in 2000. At that time, she started as a teller and, through multiple promotions, became Branch Manager at the Bank's Robstown branch. On April 14, 2017, Pena was not feeling well. Her husband came to the bank, took her pulse, and declared that she was having heart palpitations and needed medical attention. Pena left with her husband and never returned to work.

While there are no medical records in evidence, Pena testified to a nearly four-month medical odyssey, including the initial emergency room visit on April 14, 2017, through a number of doctors and alternative medicine practitioners concerned with her heart, liver, colon, and anxiety. She claims to have been tested at M.D. Anderson's cancer center and diagnosed with a small tumor in her colon. Her doctor told her he was "more than sure it was malignant." Nonetheless, further testing was "inconclusive." D.E. 21, p. 29. She represents this inconsistent hearsay as a diagnosis of unspecified cancer.

Throughout this time, she generally did not communicate with the Bank unless its employees contacted her first. Her silence was despite her knowledge that Bank policy required doctor's notes for employees who were out sick for more than a day or two. D.E. 18-1, pp. 8-9. After Pena had been absent three weeks, James Spruce, the Bank's

Vice President of Operations, requested a doctor's excuse. D.E. 18-1, p. 9. On May 11, 2017, Pena provided one that said only that Pena was under the doctor's care and, "Allow her to be absent from work for 2 weeks until medically cleared." D.E. 18-1, pp. 12, 66. Pena did not return to work in two weeks and did not provide any additional doctor excuses or proof of medical restrictions on work. *Id*. Previously, Pena's family doctor had issued an excuse dated May 2, 2017, stating that Pena could return to work without restrictions on May 16. D.E. 18-1, p. 12. Pena did not provide that excuse to the Bank or produce it with her discovery responses. *Id*., p. 13; D.E. 21, p. 37.

On May 24, 2017, Pena texted Craig Cavitt, the Bank's Senior Vice President and Cashier, with questions about the status of her job, insurance benefits, and her COBRA rights, concerned that her job was in jeopardy because of her absence. D.E. 18-1, pp. 13-15. She advised Cavitt on June 16, 2017, that she had a tumor and said, "thank u for all the bank has done for me." *Id*., pp. 63-64. She also asked him to advise her of when her paid leave would expire, which he did. *Id.* She admitted, "I knew my position wasn't guaranteed if I was sick." D.E. 21, p. 29. On June 17, 2017, Pena texted Spruce the news that she was diagnosed with colon cancer. D.E. 18-1, pp. 15-17. She thanked him for being a good boss and told him she had enjoyed working at the bank. *Id*. She also wrote, "maybe some day I will return & get the opportunity to work again." D.E. 18-1, pp. 61-62.

With the Bank's cooperation in providing the necessary forms and urging her to submit the claim right away, Pena filed a claim for long term disability insurance on July 3, 2017, not knowing when she would be well enough to work. D.E. 18-1, pp. 18-19, 29.

She also applied for, and received, unemployment. *Id.*, p. 20; D.E. 21, p. 32. The Bank paid Pena through July, based on her remaining sick leave and annual leave benefits. D.E. 18-1, pp. 26-28.

On August 3, 2017, the Bank advised Pena that they had to clean out her office. The next day, a Friday, Pena went to the Bank to clear out the desk herself, shredding notes about Bank operations that she had kept for her personal use. At that point, Pena had not previously presented herself as ready, willing, and able to return to work. D.E. 21, p. 32. However, she went to Cavitt's office that day to tell him she was fine and ready to come back to work. On the following Monday, she initiated contact with supervisors, claiming that she was ready to return to work but did not yet have a doctor's release. D.E. 18-1, pp. 52-53.

By August 9, 2017, Pena had spoken with her former supervisor, Corina Garcia, who had resigned in April 2016. D.E. 21, p. 62. Garcia suggested that the Bank officers discriminated against Pena because of her Jehovah's Witness faith. While this was a new idea to Pena, she immediately decided to hire an attorney to make this claim. D.E. 21, p. 34. She filed her EEOC Charge of Discrimination on November 10, 2017. D.E. 18-1, pp. 70-75.

With respect to religion, it is undisputed that the Bank re-hired Pena in 2000, knowing that she was a Jehovah's Witness and that it employs other adherents to that faith. It is further undisputed that the Bank permitted Pena to take a week off every year, with pay, to attend the Jehovah's Witness annual convention. However, Pena has

testified to a number of instances related to supervisory employees taunting her because Jehovah's Witnesses do not celebrate holidays.

In particular, her supervisor, Beverly Moore, questioned whether Pena, like other employees, could accept a full-size poinsettia given one time in anticipation of the Christmas holiday by a bank director. Pena did receive one and accepted it as a kind gesture, not as a holiday celebration. Moore deliberately excluded Pena from the count of employees to receive a customer-supplied personal staff gift of a small poinsettia. Pena did not receive that gift. Moore also teased Pena about bonuses given in December, commonly referred to as a Christmas bonus. Despite the commentary, Pena did receive annual bonuses like the rest of the employees. All of these religious complaints are associated with the tenure of Beverly Moore, who retired in 2012.

While Pena did not identify any other particular instance of religious discrimination after Moore's retirement, Corina Garcia, the Bank's former Vice President of Operations, testified that another branch manager told her that Cavitt and Chairman of the Board Buddy Wood, along with an administrative assistant, were prejudiced against Pena because of her religion and that Garcia should anticipate obstacles to any effort she might make to further promote Pena. Cavitt specifically objected to Pena getting the Fourth of July week off every year for the Jehovah's Witness convention and he wanted to ensure that if any other more senior employee wanted to take that week off, that no preference should be given to Pena. D.E. 21, p. 55. According to Garcia, there was never a conflict between the vacation schedules and Pena was able to take that week off.

## B. Evidentiary Objections

**Spruce Affidavit**.  Pena objects to a number of statements in Spruce's affidavit as "bare allegations of fact, conclusory facts or legal conclusions" or "opinion offered as a fact in the form of a conclusion."  D.E. 21, pp. 1-2.  The observation regarding what Pena failed to provide to the Bank in terms of the duration or reason for her absence or date of expected return is proper fact testimony.   It is further cumulative of Pena's own testimony regarding the information she did and did not provide.

The objection regarding the content of the doctor's excuse that Pena provided is cumulative of the note, which is in evidence and not subject to objection.   Spruce's testimony that he was aware that Pena came to the bank to clean out her desk is cumulative of Pena's own testimony that, when she found out the Bank was going to clean out her office, she went to her office and removed and shredded notes about Bank business that she had kept for her own personal use.   It is also admitted in Pena's response that she went to the Bank to clean out her desk.  D.E. 21, ¶¶ 36, 52.  Spruce's testimony that he was aware of this development is within his personal knowledge and is appropriate evidence.  The objections to Spruce's affidavit are OVERRULED.

**Cavitt Affidavit**.  Pena objects to Cavitt's statement that he contacted Pena during her absence and let her know she could not remain absent indefinitely as without time and date context.  Sufficient context is provided by "during her absence."  Pena has not raised any issue in this case that requires narrowing the time frame for this statement. Cavitt's mention of the text message Pena sent to Spruce is outside the definition of hearsay because it concerns a statement of a party opponent.  Fed. R. Evid. 801(d)(2)(A).

It is further cumulative of the actual printout of the text message, which is in evidence and not subject to objection. D.E. 18-1, p. 69. The conclusions Cavitt drew from Pena's communications, or lack of communications, is appropriate fact testimony.

Likewise, Cavitt's testimony that he discussed Pena's benefits with her because she had indicated she would not be returning to work is cumulative of Pena's own testimony that: she wanted to be kept apprised of when her leave time would expire; she was not ready to return to work even after her sick leave and annual leave were both used up; she had not advised the Bank of any proposed return date; and she hoped that "someday" she would be able to return to work, thanking her colleagues for having been good bosses. The testimony that Pena indicated her resignation is proper fact testimony, cumulative of Pena's testimony admitting to sending the texts referenced in the affidavit. The objections to Cavitt's affidavit are OVERRULED.

**Corina Garcia's Deposition**. The Bank objects to much of Corina Garcia's testimony on the basis of hearsay. In particular, Garcia's recitation of things allegedly said by Lana Tong for the truth of the matter asserted—that Moore, Cavitt, and Wood did not like Pena because of her religion and would create obstacles to Pena's success—are classic hearsay. As such, they are inadmissible.

Moreover, Garcia's testimony does not purport to relate personal knowledge of any Bank conduct during the 300 days included in the limitations period. Garcia's tenure at the Bank ended in April 2016. D.E. 21, p. 44. The 300 days included in the limitations period, discussed more fully below, begins January 14, 2017. Garcia's testimony thus does not include any personal knowledge of events taking place within the

Bank during the applicable time period. It is irrelevant. The objections are SUSTAINED and the Court disregards the deposition testimony.

**Pena's Deposition**. The Bank objects to Pena's recitation of the conclusions she derived from Corina Garcia's statements that Bank supervisors wanted Pena gone because of her religious affiliation. The stated objections are: hearsay, conclusory, and not based on personal knowledge. Pena admitted in her testimony that, other than the incidents involving Moore prior to the close of 2012, she did not know about any discriminatory acts or attitudes on the part of the Bank or its employees. She only listened to Garcia and thought about it, concluding that it "made sense." Pena's testimony in this regard is not based on personal knowledge.

As set out above, the Bank also objects to Garcia's testimony as hearsay and as irrelevant. Garcia's testimony is hearsay and speculative as to individual motivations and any causal relationship between those motives and Pena's employment status in 2017. That part of Pena's testimony, based entirely on what Garcia's told her, is not admissible. The objections are SUSTAINED and the Court disregards all of Pena's testimony based on Garcia's assertions derived from the statements of others.

**Pena's Affidavit**. The Bank objects to Pena's affidavit and moves to strike it on the basis that it is not based on personal knowledge but is speculative, she is not competent to offer the conclusions made, it is hearsay, and it recites inadmissible legal conclusions or argument. With respect to Pena's recitation of her treatment at the hands of Beverly Moore, the affidavit is cumulative of Pena's deposition testimony in the record, to which no objection has been made. The statements attributed to Moore are not

offered for their truth but only as evidence of her treatment of Pena and are thus not hearsay and are within Pena's personal knowledge. Subject to a legal determination of the effect of such testimony, given the statute of limitations and the requirement of a causal nexus between conduct and any adverse employment action, the Court OVERRULES the objections and admits that portion of the affidavit.

Pena's recitation of her conversations with Cavitt and Spruce between August 3 and 7, 2017, are within her personal knowledge and recount statements of a party opponent. Thus they do not constitute inadmissible hearsay. Fed. R. Evid. 801(d)(2)(A). The Court OVERRULES the objections to that portion of Pena's affidavit. However, as the affidavit recounts what Irma Garza said that Mr. Delgado told her, the testimony is inadmissible hearsay. The Court SUSTAINS the objections to that portion and excludes it.

On the basis of unsupported conclusion, the Bank objects to the sentence: "Mr. Cavitt had the power and authority on deciding that I be terminated without a reasonable cause." Given Pena's tenure with the Bank and her former position as branch manager, Pena has the background to testify whether Cavitt had authority to hire and fire on behalf of the Bank. The objection is OVERRULED as to that portion of the sentence. The clause that concludes that Pena was terminated without reasonable cause is conclusory and argumentative and, to the extent that it is stated as fact, the objection is SUSTAINED and the clause is excluded.

The Bank objects to Pena's claim that Cavitt was required to, and did not, explain procedures regarding the information expected of her with respect to her illness and

request for leave. The basis of the objection appears to be that it conflicts with Pena's deposition testimony that she, as a branch manager, was aware of the sick leave policies regarding doctor's excuses and had enforced them herself. Internal inconsistency is not a basis for excluding testimony. At the same time, however, a party cannot raise a disputed issue of material fact by impeaching his own prior testimony. *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000) (a nonmoving party may not manufacture a dispute of fact by providing an affidavit inconsistent with prior testimony—without explanation—merely to defeat a motion for summary judgment). The Court OVERRULES the objection.

Complaining that the testimony is incomplete and conclusory, the Bank objects to Pena's suggestion that Cavitt treated her less favorably than three other employees and himself with respect to long term absences based on illness. The issue before the Court is whether Pena followed appropriate procedures and supplied the necessary information to get approval for a long term medical leave of absence. Her testimony regarding the other employees offered as comparators does not touch on this material issue. It is conclusory and irrelevant. The Court SUSTAINS the objections.

The Bank also takes issue with Pena's characterization of Cavitt's motivations on June 29, 2017, handling the paperwork to allow Pena to claim her COBRA rights. It also disputes Pena's representation that she was accruing sick leave at the time. It is undisputed that Pena's last paycheck covered the period ending July 13, 2017, and that the Bank had kept her apprised of this end to her income. Pena engages in speculation when she attributes sinister motives to Cavitt's effort to provide Pena with long-term

disability and COBRA information. Such speculation is inadmissible and the Court SUSTAINS the objections to Pena's assertions regarding Cavitt's motivation. The issue of whether Pena was accruing sick leave has not been developed in this case and the Court holds that any objection to that information is moot.

### C. Limitations and Religious Discrimination

Pena brings her religious discrimination and retaliation claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. The unlawful employment practice of which she complains is her alleged termination on or about August 3, 2017. The limitations period for initiating an Equal Employment Opportunity Commission (EEOC) claim of employment discrimination is 180 days after the termination. 42 U.S.C. § 2000e-5(e)(1). Alternatively, if the complainant files with the Texas Commission on Human Rights (TCHR) (a state agency with authority to grant or seek relief from discriminatory practices), the limitations period is extended to 300 days of the termination. *Id*. Pena filed her Charge of Discrimination on November 10, 2017, simultaneously with both the TCHR and the EEOC. Under those circumstances, the 300-day limitations period applies. *Griffin v. City of Dallas*, 26 F.3d 610, 613 (5th Cir. 1994). Pena's claim, filed 99 days after the alleged termination, is timely.

That does not mean, however, that Pena can draw on any past misconduct to support her current claim. In particular, the Bank seeks to eliminate consideration of any conduct preceding the 300-day limitations period. That includes the poinsettia and annual bonus controversies that took place in or before 2012, Pena's complaints about being denied a floater to assist with workload in 2015, and complaints about computer

maintenance.  *See* D.E. 18-1, p. 70.  The Bank's argument is consistent with Pena's own charge that lists the dates on which discrimination took place as being between March 24, 2017, at the earliest and August 4, 2017, at the latest.  D.E. 18-1, p. 74.

Pena argues that checking the box for a "continuing action" allows consideration of all past conduct as relevant historical information, citing *Fisher v. Proctor & Gamble Mfg. Co.*, 613 F.2d 527 (5th Cir. 1980) and *Soto v. El Paso Natural Gas Co.*, 942 S.W.2d 671, 677 (Tex. App.—El Paso 1997, writ denied).  In *Fisher,* the Fifth Circuit was faced with evidence of past discriminatory hiring practices that were perpetuated by a policy that required an employee, before transferring to a better position, to forfeit previously-acquired seniority.  The Court found no error in the trial court's consideration of evidence that "is relevant and admissible to show possible plant-wide discriminatory conduct with continuing effects, the probability of the continuation of such conduct, and the relationship between past actions and present effects and actions."  613 F.2d at 540.  The court was careful to specify that the test for considering such pre-limitations evidence is more liberal when the case is a class action challenging broad and sweeping discriminatory policies.  This is not such a case.

In *Soto*, the state court evaluated pre-limitations conduct in connection with a claim of a hostile work environment, sexual harassment claim.  The claim, by its very nature, required evidence of conduct that was severe and persistent under the totality of circumstances.  Thus, historical evidence was necessary and was limited to that which was part and parcel of the conduct falling within the limitations period.

While Pena is correct that both of these cases allowed evidence of historical context, they both did so under circumstances in which the historical evidence was clearly related to the particular adverse employment action that was not time-barred. This has been the approach in the Supreme Court and in the Fifth Circuit, as described in *Gallentine v. Housing Auth. of City of Port Arthur, Tex.*, 919 F. Supp. 2d 787, 800 (E.D. Tex. 2013):

> First, the plaintiff must demonstrate that the separate acts are related, or else there is no single violation that encompasses the earlier acts. Second, the violation must be continuing; intervening action by the employer, among other things, will sever the acts that preceded it from those subsequent to it, precluding liability for preceding acts outside the filing window. Third, the continuing violation doctrine is tempered by the court's equitable powers, which must be exercised to honor Title VII's remedial purpose without negating the particular purpose of the filing requirement.

919 F. Supp. 2d at 800 (citations to *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009) and *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002), internal quotation marks omitted; both cases are hostile work environment cases.).

To be eligible for consideration as evidence of the current violation, past actions must form a pattern or policy of the same type of discriminatory acts. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir. 2004). Here, Pena has not demonstrated that holiday-related teasing and taunting, and even being deprived of a poinsettia, is related to any alleged termination five years later. Intervening between the events are the following:

- The Bank granted her request and transferred her to the Robstown branch—away from Beverly Moore.  D.E. 21, p. 65.

- She had a long illness and failed to provide medical documentation or a return date.

- She admits that she was never deprived of her vacation requests.

- Nothing connects the assignment of a floater to another branch or the failure to properly maintain computer systems to any discriminatory practice or her own termination.

Any effort to connect any alleged discrimination to the termination of Pena's employment is the result of speculation or improper inference.

The Court DENIES the motion to the extent it seeks dismissal of the discriminatory termination claim on the basis of limitations.  However, the Court HOLDS that conduct outside the 300-day limitation period may not be used to support Pena's claims of discrimination or retaliation.

### D.  Prima Facie Case of Discrimination

#### 1.  Religious Discrimination

Pena's burden to establish a prima facie case must be met by providing evidence "that she: (1) is a member of a protected class; (2) was qualified for her position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class," or, in the case of disparate treatment, shows "that others similarly

situated were treated more favorably."[1]   *Okoye v. Univ. of Texas Houston Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001) (quoting *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999)).   Because Pena has not attempted to provide any evidence with respect to her replacement as branch manager, this case is one for disparate treatment.   The Bank challenges the second, third, and fourth elements:   Pena's qualifications, whether she was terminated or resigned, and her less favorable treatment.

The Bank does not contend that Pena was incapable of acting as a qualified, competent branch bank manager.   Instead, it asserts that—by her own account—her anxiety and illnesses left her rattled and incapable of thinking straight.   She admits that she was not ready to return to work on August 3, 2017.   She prefaced her ability to return to work after that date on obtaining medical clearance.   She proffered no evidence that she had, or could get, that medical clearance.   The Court agrees that Pena has not provided evidence that she was ready and able to return to work even though she professed to be willing to do so.   Thus, she has failed in her burden to show that she was qualified for her position.

The burden to show disparate treatment requires demonstrating that comparators who are not in the same protected class, but are otherwise in nearly identical circumstances, were treated more favorably.

---

[1]   Alternatively, a plaintiff may show a prima facie case of religious discrimination by establishing that she had a bona fide religious belief that conflicted with an employment requirement, that she informed the employer of this belief, and that she was discharged for failing to comply with the conflicting employment requirement.   *Weber v. Roadway Exp., Inc.*, 199 F.3d 270, 273 (5th Cir. 2000).   Or she could present a direct evidence claim, with "evidence that, if believed, proves the fact of discriminatory animus ***without inference or presumption***."   *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002) (emphasis added).   Pena's admissible evidence does not invoke either of these methods for demonstrating a religious discrimination claim.

> The employment actions being compared will be deemed to
> have been taken under nearly identical circumstances when
> the employees being compared held the same job or
> responsibilities, shared the same supervisor or had their
> employment status determined by the same person, and have
> essentially comparable violation histories. And, critically, the
> plaintiff's conduct that drew the adverse employment decision
> must have been "nearly identical" to that of the proffered
> comparator who allegedly drew dissimilar employment
> decisions. If the "difference between the plaintiff's conduct
> and that of those alleged to be similarly situated accounts for
> the difference in treatment received from the employer," the
> employees are not similarly situated for the purposes of an
> employment discrimination analysis.

*Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009).

Pena named four Bank employees who she claims were able to take long medical leaves of absence but still return to their jobs. Assuming for purposes of argument that they were similarly situated in terms of position, responsibilities, supervisor, and employment history, the record is still silent with respect to the triggering conduct— whether those employees had medical documentation to support their claims, had kept the Bank apprised of their status on a regular basis, and had identified a viable return date. Pena's burden of proof calls on her to develop these issues in order to demonstrate whether the comparison between Pena and those other employees is apt. Because Pena failed to offer evidence sufficient to establish the second and fourth elements, the Court need not, and does not, address the issue of whether Pena was terminated or resigned.[2] The Court GRANTS the motion for summary judgment and DISMISSES the religious discrimination claim.

---

[2] This further renders moot the question whether Pena submitted competent evidence that any request to CEO Bobby Miller for a leave of absence extending beyond August 3, 2017, had been approved.

## 2. Disability Discrimination

The rubric for evaluating a disability discrimination claim under the Americans with Disabilities Act (ADA)[3] is similar to that for a religious discrimination claim. Pena must show: (1) that she has a disability;[4] (2) that she was qualified for the job; and (3) that she was subject to an adverse employment decision on account of that disability. *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014). As set out above, Pena admitted that she was incapable of work and had not identified an ability to return to work before August 3, 2017. Therefore, she was not qualified for the job.

Because her prima facie case is defeated on that element, the Court, again, does not reach the issue of whether the Bank terminated Pena or Pena effectively resigned. And as discussed above, when treated as a matter of disparate treatment, Pena did not develop the evidence of whether the comparators were similarly situated. The Court GRANTS the motion and DISMISSES the disability discrimination claim.

## E. Prima Facie Case of Retaliation

### 1. Protection on the Basis of Religion

In the context of religion, "In order to prove a prima facie case in a retaliation claim the employee must show: (1) that the employee engaged in activity protected by Title VII; (2) the employer took adverse employment action against the employee; and (3) a causal connection exists between the protected activity and the adverse employment

---

[3]  42 U.S.C. § 12101, et seq.

[4]  The Bank disputes whether Pena is disabled because she has failed to submit medical evidence that she has cancer. This does not address Pena's claim of debilitating anxiety and does not account for the ADA's definition of "disabled" as including being regarded as having a physical or mental impairment that substantially limits one or more major life activities. 42 U.S.C. § 12102. Because the Court finds Pena's prima facie case lacking on other issues, it declines to address whether Pena was disabled as defined by the statute.

action." *Haynes v. Pennzoil Co.*, 207 F.3d 296, 299 (5th Cir. 2000). An employee engages in activity protected by Title VII by either (1) opposing any practice defined as unlawful by Title VII or (2) making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under Title VII. *Id.* (citing 42 U.S.C. § 2000e–3(a)).

The Bank challenges Pena's retaliation claim on the basis of her failure to show that she engaged in a predicate protected activity. Pena has offered no evidence that, prior to her separation from the Bank, she complained of any religious discrimination in her own employment or in the Bank's employment of others. Neither does the record reflect any prior Title VII proceeding, much less one that she was involved in. Pena has failed to establish a prima facie case for religious-based retaliation and the Court GRANTS summary judgment DISMISSING that claim.

### 2. Protection on the Basis of Disability

Likewise, in the context of disability, "To show an unlawful retaliation, a plaintiff must establish a prima facie case of (1) engagement in an activity protected by the ADA, (2) an adverse employment action, and (3) a causal connection between the protected act and the adverse action." *Seaman v. CSPH, Inc*., 179 F.3d 297, 301 (5th Cir. 1999). Assuming without deciding that Pena's evidence satisfies her burden to show a prima facie case, the Bank has articulated a non-retaliatory reason for its actions: Pena's failure to provide medical documentation, failure to timely communicate with the Bank regarding her need for time off, failure to provide a medical excuse for the amount of time taken, and failure to indicate a viable date by which she would return to her post.

According to the *McDonnell Douglas* burden-shifting framework, the burden then returns to Pena to show that the Bank's explanation is pretextual. The evidence supports the Bank's representation of Pena's insufficient communications regarding her need for long and continued disability leave past the exhaustion of her sick leave and annual leave benefits. Pena claimed to have been diagnosed with cancer, thanked her bosses for being good to her, and hoped "some day" to be able to work again. She filled out a long term disability claim and did not express any intent to return to work until after she learned that her office would be cleaned out. Pena has not presented any competent summary judgment evidence to suggest that the Bank's reading of her own conduct is pretextual and that her alleged termination was retaliatory.

The Court GRANTS the motion and DISMISSES the claim for retaliation based on disability.

### F. Disability Accommodation

Pena brings her claim for failure to accommodate her disability pursuant to Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. A prima facie claim for failure to accommodate requires that: "(1) the plaintiff is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Credeur v. La. Through Office of Attorney Gen.*, 860 F.3d 785, 792 (5th Cir. 2017).

As a preliminary matter, the Bank challenges Pena's claim on the basis that Pena never requested an accommodation.

> The ADA defines the term "discriminate" to include "not making reasonable accommodations to the *known* . . . limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). [Emphasis added] The legislative history emphasizes that the duty to accommodate is triggered by a request from an employee. H.R.Rep. No. 485, 101st Cong., 2d Sess. pt. 2, at 65 (1990); S.Rep. No. 116, 101st Cong., 1st Sess., at 34 (1989). EEOC Regulations implementing the equal employment provisions of the ADA provide that, in general, "[i]t is the responsibility of the individual with a disability to inform the employer that an accommodation is needed." 29 C.F.R. § 1630.9 App. (1992). *See also* EEOC Technical Assistance Manual on the Employment Provisions (Title I) of the ADA § 3.6 (January 1992). Indeed, the legislative history goes on to state that: "In the absence of a request, it would be inappropriate to provide an accommodation . . . ." H.R.Rep. No. 485, 101st Cong., 2d Sess., pt. 2, at 65 (1990); S.Rep. No. 116, 101st Cong., 1st Sess., at 34 (1989).

*Tips v. Regents of Tex. Tech Univ.*, 921 F. Supp. 1515, 1518 (N.D. Tex. 1996). The only request that Pena has demonstrated that she made prior to her separation was to remain off work indefinitely because her mental faculties were insufficient to perform her job because she was facing any number of chronic conditions or illnesses.

This request is insufficient both because indefinite time off is not a proper accommodation and because the request constitutes an admission that whatever disability she claimed rendered her unqualified to do the work necessary.

> As an initial matter, there is general consensus among courts, including ours, that regular work-site attendance is an essential function of most jobs. *See, e.g., Hypes on Behalf of Hypes v. First Commerce Corp.*, 134 F.3d 721, 727 (5th Cir. 1998) (per curiam) (collecting cases); *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 761 (6th Cir. 2015) (en banc) ("[The] general rule [is] that, with few exceptions, 'an employee who does not come to work cannot perform any of his job functions, essential or otherwise.'" (quoting *EEOC v. Yellow*

> Freight Sys., Inc., 253 F.3d 943, 948 (7th Cir. 2001) (en banc))). This is especially true when the position is interactive and involves a significant degree of teamwork. *Hypes*, 134 F.3d at 727 ("[T]eam work under supervision generally cannot be performed at home without a substantial reduction in the quality of the employee's performance." (alteration in original) (quoting *Vande Zande v. State of Wis. Dept. of Admin.*, 44 F.3d 538, 544 (7th Cir. 1995))); *accord Ford Motor Co.*, 782 F.3d at 761 ("[M]ost jobs require the kind of teamwork, personal interaction, and supervision that simply cannot be had in a home office situation." (quoting *Rauen v. U.S. Tobacco Mfg. L.P.*, 319 F.3d 891, 896 (7th Cir. 2003))).

*Credeur,* 860 F.3d at 793.

As a branch manager, Pena's job included supervision of other employees and filling in different positions, such as teller, when there were insufficient hands on deck. D.E. 18-1, p. 70. "An essential element of most jobs is an ability to appear for work and to complete assigned tasks within a reasonable period of time." *Prejean v. Cypress-Fairbanks Indep. Sch. Dist.*, 97 F. App'x 480, 483 (5th Cir. 2004). "Nothing in the text of the reasonable accommodation provision requires an employer to wait an indefinite period for an accommodation to achieve its intended effect." *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 759–60 (5th Cir. 1996) (quoting *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995)). An employer cannot be expected to keep a position open after exhaustion of all accrued paid leave with no expected return date. *Reed v. Petroleum Helicopters, Inc.*, 218 F.3d 477, 481 (5th Cir. 2000).

Because Pena has demonstrated that she is not a qualified individual, she did not properly request an accommodation, and indefinite leave is not a reasonable

accommodation, the Court GRANTS the motion for summary judgment and DISMISSES

Pena's claim for failure to accommodate her disability.

## CONCLUSION

For the reasons set out above, the Court GRANTS the Bank's motion for summary

judgment (D.E. 18) and DISMISSES this action WITH PREJUDICE in its entirety.

ORDERED this 3rd day of September, 2019.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE